UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                Case No. 21-CR-0223 (PJS/LIB)

                    Plaintiff,

v.                                                      ORDER

MARCELL DOUSHAWN ESTES,

                    Defendant.

Sarah E. Hudleston, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Thomas H. Shiah, LAW OFFICES OF THOMAS H. SHIAH, LTD., for defendant.

Defendant Marcell Doushawn Estes was charged with one count of possessing a firearm as a felon. Estes filed two motions to suppress evidence—one arguing that his car was stopped and searched in violation of the Fourth Amendment and one arguing that incriminating statements were elicited from him in violation of the Fifth and Sixth Amendments. In a Report and Recommendation ("R&R") dated January 11, 2022, Magistrate Judge Leo I. Brisbois recommended that the former motion be denied and that the latter motion be granted in part and denied in part. Both parties now object to the R&R. After conducting a de novo review, *see* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b), the Court agrees with the government that both of Estes's motions must be denied in full.

I.  THE STOP AND SEARCH OF ESTES'S CAR[1]

The Court agrees with Judge Brisbois that Estes's rights under the Fourth Amendment were not violated.  Minnesota State Patrol Trooper Nicholas Otterson stopped Estes after observing the heavily tinted windows on Estes's car.  Estes objects that "[t]he stop was pretextual and possibly racially motivated," ECF No. 35 at 2, but cites not a shred of evidence that Trooper Otterson was motivated by Estes's race.

In any event, the subjective motivation of Trooper Otterson is legally irrelevant. The question whether a law-enforcement officer had probable cause to stop a car is objective, turning not on what the officer who made the stop actually concluded, but on what a reasonable officer in the position of that officer would have concluded.  *Whren v. United States*, 517 U.S. 806, 813 (1996).  Having viewed the squad-car video of Trooper Otterson's encounter with Estes—and, in particular, having examined the tinting of the windows of Estes's vehicle, Gov't Ex. 1 at 00:57—the Court agrees that a reasonable officer would have had probable cause to stop Estes.

After stopping Estes, Trooper Otterson developed probable cause to suspect a violation of the drug laws after smelling the strong odor of marijuana wafting from the car.  At that point, Trooper Otterson was permitted to conduct a warrantless search of the car for evidence of that violation.  *United States v. Short*, 2 F.4th 1076, 1078 (8th Cir.

---

[1]The Court assumes familiarity with the facts described in the R&R.

2021).  Trooper Otterson could search the backpack, too, since the backpack was in the car and could contain the object of the search.  *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999).

Estes's objection that the aroma might have been that of legal hemp, not marijuana, is unavailing.  To begin with, there is no evidence in the record that burned marijuana smells so much like burned hemp that an experienced law-enforcement officer cannot tell the odors apart.[2]  Moreover, Estes said not a word about hemp at the scene, but did implicitly admit that what Trooper Otterson was smelling was marijuana.  *See* ECF No. 32 at 58.  Add Trooper Otterson's other observations—Estes's bloodshot eyes; the green, leafy debris around the console and drink holder; the Cookies-brand backpack in the back seat; and the monocular spotting scope, *id.* at 18–20—and there was "a fair probability that contraband or evidence of a crime would be found in [the car]."  *United States v. Rodriguez*, 414 F.3d 837, 843 (8th Cir. 2005).

In sum, Trooper Otterson had probable cause to stop Estes, and Trooper Otterson quickly developed probable cause to search Estes's car and backpack for marijuana.  Estes's motion to suppress evidence under the Fourth Amendment is therefore denied.

## II.  ESTES'S STATEMENTS

---

[2]The facts implied by Estes's attorney in questioning Trooper Otterson at the evidentiary hearing—such as "Are you aware they both smell the same?," ECF No. 32 at 44—are obviously not evidence.

The Court agrees with Judge Brisbois that Estes was not in custody—and therefore that a *Miranda* warning was not required—prior to "the point where Trooper Otterson began questioning [Estes] about the firearm." ECF No. 34 at 17. The Supreme Court has been clear that traffic stops (such as Trooper Otterson's stop of Estes) are typically not "custodial" for *Miranda* purposes. *See Berkemer v. McCarty*, 468 U.S. 420, 437–40 (1984). As the Supreme Court has explained, traffic stops are "presumptively temporary and brief," *id.* at 437, and "questioning incident to an ordinary traffic stop is quite different from stationhouse interrogation," *id.* at 438. Moreover, Trooper Otterson repeatedly told Estes that he was not under arrest. *See, e.g.*, Gov't Ex. 1 at 7:42, 11:41. In addition, Trooper Otterson stopped Estes in a public place; there were passersby in the casino parking lot, both on foot and in other cars, *see* Gov't Ex. 1 at 3:30, 5:14, witnessing "the interaction of officer and motorist," *Berkemer*, 468 U.S. at 438. Finally, Trooper Otterson was the only law-enforcement officer on the scene, "further mut[ing] [Estes's] sense of vulnerability." *Id.* These circumstances "mitigate[d] the danger that [Estes] w[ould] be induced 'to speak where he would not otherwise do so freely.'" *Id.* at 437 (quoting *Miranda v. Arizona*, 384 U.S. 436, 467 (1966)).

As noted, Judge Brisbois found that Estes was taken into custody at "the point where Trooper Otterson began questioning [Estes] about the firearm." ECF No. 34 at 17. Judge Brisbois then found that statements uttered by Estes after that point had to be

suppressed because even though Trooper Estes had given Estes a *Miranda* warning a few minutes earlier, and even though Estes acknowledged that he understood that warning, "there is nothing to establish that [Trooper Otterson] ever secured a waiver of [Estes's] *Miranda* rights." *Id.* at 18.

The Court is not certain whether Judge Brisbois was correct in identifying the point at which Estes was taken into custody, but it does not matter. Even assuming that Judge Brisbois was correct, he nonetheless erred in finding that Trooper Otterson was required to secure an affirmative waiver from Estes, as even Estes concedes. *See* ECF No. 39 at 2 ("[A]n affirmative waiver of *Miranda* rights is not required."). The Supreme Court has clearly explained that "[t]he prosecution . . . does not need to show that a waiver of *Miranda* rights was express. An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 376 (1979)).

One way in which a suspect can implicitly waive his *Miranda* rights is by making "an uncoerced statement" after "a *Miranda* warning [is] given," as long as the suspect understands his rights. *Id.* That is precisely what happened in this case. Trooper Otterson gave a *Miranda* warning to Estes, Estes explicitly acknowledged that he understood his rights, and Estes's subsequent statements were not coerced. Without question, then, Estes implicitly waived his *Miranda* rights.

Estes nevertheless argues that his statements should be suppressed because Trooper Otterson's repeated assurances that Estes was not under arrest "deceived [him] and prevented him from making a knowing decision about whether he actually had [*Miranda* rights]."  ECF No. 39 at 4.  Estes's argument is difficult to understand.  The relevant question is not whether Estes made a "knowing decision" about whether he was in custody and therefore Trooper Otterson was *required* to give him a *Miranda* warning.  Rather, the relevant question is whether Estes validly waived his Fifth and Sixth Amendment rights.  Estes may not have known whether he was in custody, but he surely knew that he had the right to remain silent, that anything he said could be used against him, that he had the right to be represented by an attorney, and that an attorney would be provided at no cost if he could not afford to retain one.  These rights are not difficult to understand, Estes affirmed that he understood them, and there is no reason to doubt that he understood them.  After all, Estes has a long criminal record and likely has been informed of his Fifth and Sixth Amendment rights on numerous occasions.

In sum, Estes implicitly waived his Fifth and Sixth Amendment rights when, after being given a *Miranda* warning and acknowledging that he understood his rights, he made uncoerced statements to Trooper Otterson.  Estes's motion to suppress those statements is therefore denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.      The government's objection [ECF No. 37] is SUSTAINED.

2.      The defendant's objection [ECF No. 35] is OVERRULED.

3.      The report and recommendation [ECF No. 34] is ADOPTED IN PART

        AND REJECTED IN PART, as explained in this Order.

4.      The defendant's motions to suppress [ECF Nos. 22 & 23] are DENIED.

Dated:  March 8, 2022                         s/Patrick J. Schiltz
                                              Patrick J. Schiltz
                                              United States District Judge